Our final case of the morning is number 21-11016, Mary E. Harris v. Public Health Trust of Miami-Dade You may begin when you're ready. I see you reserved four minutes for rebuttal. Is that correct? That's correct, your honor. Thank you, your honor. May it please the court. Noah Nix on behalf of Mary Ellen Harris. Ms. Harris's supervisor, Ms. Carino, told Ms. Harris to her face that blacks are lazy, that they don't like to work, and that that is why she doesn't hire any. The question today is simply whether those statements can create a hostile work environment. This court has already answered that question and the answer is yes. So you don't, just so I'm clear, you're not like walking away from your non-hostile work environment claims today. You're just focusing on your hostile work environment claim. Correct, your honor, and I plan to address the disparate treatment claim as well as the retaliation should we have time. So this, the 11th circuit has listed racist statements which in its words are quote sufficiently severe to create a hostile work environment. Among the statements in that list was the statement quote black men are lazy, which is no different than the statement we have in this case and so that's the law in this circuit and the district court simply got it wrong. Do you have any cases where there was only one such comment and that was held to create a hostile work environment? No, your honor. However, in Smelter versus Southern Home Care Services, this court rejected the argument, the defendant's argument that a one-time use of the n-word could not create a hostile work environment and while the statement we have in this case is the n-word, we have its functional equivalent. Laziness was the primary justification for hundreds of years of slavery and subsequent second-class citizenship in the Jim Crow era and the n-word itself is in fact offensive because it relies on those notions in that history and in an era where the n-word is becoming increasingly inappropriate to use, these stereotypes which underlie the n-word are what people rely on, namely laziness and the important thing to keep in mind here is we're looking at this from the perspective of an African-American employee and the effect on that listener is no different. It conjures up the same deeply hurtful sentiments that the n-word does and so this court's line in Smelter where it says that it strongly disagrees that a one-time use of the n-word can create a hostile work environment is helpful to us here. The Fifth Circuit has also recently found just last year in Woods v. Cantrell citing then Judge Kavanaugh of the D.C. Circuit that a one-time use of the n-word is again sufficient to create a hostile work environment and the district court erred then by finding that this was not repeated in summer substance and because of that it somehow mitigated its severity. A reasonable juror could look at this and find that when you say these blatantly racist things that ascribe a negative workplace attribute to someone solely based on the color of their skin that that immediately marks the beginning of a hostile work environment and so this court allows you to establish a hostile work environment through two avenues. The one I focused on so far is the severity prong but you can also show a hostile work environment through pervasiveness and to the extent that this court would disagree that a one-time use of racism can create a hostile work environment we've also got the pervasive argument and the it appropriately. So Ms. Harris testified that after reporting these statements and after her supervisor found out that she's not Hispanic but that she is African-American her entire demeanor changes. They once spoke Spanish together frequently then Ms. Harris testified that they had a loving caring relationship and as soon as she says no I'm not Panamanian, I'm not Dominican, I'm Black, Ms. Carino immediately becomes hostile towards her. She stalks her around the office, she effectively demotes her by denying her access to the supply closet to do her job and Ms. Harris alleges or testifies that this occurred daily and the district court dismissed both the following and the denial of the access to the supply closet on single bases. So there looking to whether something is pervasive or not. Can I can a quick question like so I mean I recognize that you've got several sort of workplace events that you say sort of collectively constitute the pervasive conduct and I don't expect that we will have the need or the time to go through them one by one but like so for instance you mentioned the supply closet. Is there what's the evidence though that the exclusion from the supply closet was based on race as it still has to be even for a hostile work environment claim? Judge Newsome the evidence is the statement itself. So Ms. Carino said. I'm sorry the statement that you don't go to the supply closet anymore or the blacks are lazy statement? The blacks are lazy statement. How much time elapsed between the statement and the the ban? According to Ms. Harris's testimony we don't have an exact date but it was shortly thereafter and we know at least it was before January of 2016 which would have been four months. During January 2016 we know that the public health trust lawyer was then involved so we'd assume that she has sort of reported this behavior before then before it could get to that stage. Do you know if Ms. Carino was ever disciplined by the hospital? She wasn't and in fact Ms. Nieves when Ms. Harris complained about Ms. Carino's actions defended Ms. Carino. She said Ms. Carino's not like that and she wouldn't say something like that. That's all we have here and Ms. Harris complained three other times to three other different supervisors and she was ignored. She was told go back to work and then Ms. Carino was even defended and that adds to the hostility of this environment because as Ms. Harris testified she felt voiceless and one of the factors we look at for pervasiveness is whether the the conduct was humiliating. It is indeed humiliating to complain to four different of your supervisors and to be ignored and to have your claims dismissed. Meanwhile your supervisor, an avowed racist, continues to harass you every single day. Everywhere you look you're confronted with her racism and returning back to Judge Newsom's question I don't think I got around to answering it. The connection between the state or the evidence that the post-statement treatment was based on race comes from the statement itself. Ms. Carino testified that she thought that blacks are lazy and her subsequent actions are consistent with that. She's following Ms. Harris around to make sure presumably that she's doing her job because she doesn't think she's going to because she thinks blacks are lazy and also it's important to note here we're at the summary judgment stage where all inferences are drawn in favor of the non-moving party that would be Ms. Harris and all facts are construed in a light most favorable to her and it's not a stretch or even an inference to begin with to say that someone who is an avowed racist the very next day is still a racist and she's acting on that racism and the final point to your question is the sharp uptick and change in behavior. If it's not clear from the briefs Ms. Carino thought that Ms. Harris was Hispanic because they always spoke Spanish together and as soon as she found out that that's not the case her treatment of Ms. Harris flips and so that's the connection to the conduct or that shows that the conduct afterwards was based on Ms. Harris's race. So the sort of thing that we would expect comparative evidence for like Ms. Harris was not granted access to the supply closet and these other people were. She was followed around the office and these other people weren't or something like that. Is that the sort of evidence that we would expect in a situation like this as a way of moving because of race if that makes sense? Sure, Judge Newsom, the answer is that it's relevant for our other claims the district treatment claim but for a hostile work environment claim there's no requirement that we need a comparator and really again at the summary judgment stage we've got testimony from Ms. Harris and in cases like Smelter testimony was all that this court has had but when we take it for face value which the court should do at summary judgment she has raised enough to establish a hostile work environment because when we look at the totality of the circumstances and when we look at this from the perspective of an African-American employee a reasonable juror could find that these statements created a hostile work environment. The reason I ask is just because it's like Title VII defines a hostile work environment claim in effect as a subset of a disparate impact claim like statutorily sort of like just structurally it's kind of shuffled in there with disparate impact sorry disparate treatment claims I'm sorry and so both have to be because of race and it's just a little weird that on the disparate treatment side we've required we've sort of constructed this superstructure of McDonnell Douglas and everything with comparators and on the hostile work environment claim which is in effect just a variant of the same claim we sort of don't do that and I was just curious about why it is that we would do it in one case but not the other and why we wouldn't expect the two claims to sort of proceed roughly the same way. Sure and I think one possible way to look at this is that under the disparate treatment claim even in this case we don't need comparative evidence because we're proceeding under a direct evidence theory and there this court has said if you're there's no need to go through the McDonnell Douglas burden shifting analysis and so I think the hostile work environment is more akin to direct evidence and circumstantial evidence because we're showing based on these statements that's directly you know establishing this hostile work environment. I wonder I know you're running out of time so you'll be on our time I wonder if maybe one reason that Judge Newsom is kind of curious about about this comparator evidence is that obviously the record also has a fairly significant number of disciplinary issues related to your client that are not from not related to Ms. Carino and I mean why wouldn't that suggest pretty strongly that whatever micromanaging or different things like that were a result of some of the some of the work related issues rather than racial discrimination? Sure Judge Grant I'd say that again in at least the hostile work environment cases that I've looked at there's there's not an analysis or one of the elements isn't whether or not the defendant could somehow justify how it was treating the plaintiff based on you know to the fact that the statements blacks are lazy they don't like to work and that's why I don't hire any that has nothing to do with her discipline or any comparators at all if this court were to look to those things it would only be relevant for the post-statement treatment which I think the statement itself the fact that Ms. Harris reported that statement and the sharp change in behavior I think that's you know drawing inferences in favor of Ms. Harris I think that's enough to show you know she wasn't disciplined for a year prior to this and then all of a sudden she is but again I don't think it's relevant at all to the statements that were made and the fact that those are sufficiently severe being that they're overtly racist to create a hostile work environment. Thank you we'll give you your full time for rebuttal since you are answering the morning bill candela assistant county attorney on behalf of the public health trust the plaintiff didn't establish a prima facie case of a hostile work environment because you have this is a one slur over 16 month case so that's that's the when you analyze this one slur over 16 month the 11th circuit has been clear in the number of cases that I'd like to point to in my brief that this one slur over 16 month is insufficient to establish a hostile work environment and it starts with Barrow and then McCann versus Tillman Latrice and Wallace house and those are all at pages 24 of my brief and it's and that's the 11th circuit has been very clear about that you also have this alleged following around and in the next page in my brief I cite to the cases that say that talk about the fact that following a co-worker around by a supervisor is also insufficient to establish a prima facie case of a hostile work environment this is particularly true here because there's nothing to indicate that the following around was premised on race or a pretty horrible thing to hear though right you're talking with someone who at work who you think is your colleague and certainly you certainly their colleague and you think they're your friend and then they say something outrageous like that and then nothing is done as far as I can tell from the record to discipline that person wouldn't might you think that you're being followed around because of racism at that point well that might be a subjective view and while it is undoubtedly boorish behavior following them around an employee around for whatever reason it would be it really doesn't rise to the level of a hostile work environment and in support of that pretty simple premise we cited Davis versus United States Postmaster that's a 2006 case in Mendoza versus Borden that you're familiar with and all of those cases say just that when you have these kind of sporadic events you have the statement and then you may have some following that wasn't related to anything and then there was another instance where the employee the plaintiff complained that Ms. Carreño the supervisor had poacher from behind and as the district court pointed out there's nothing to tie that and the plaintiff didn't do that I want to emphasize that didn't do that below there was nothing to tie that to the employee's race and that's that's that's the emphasis in in the district court's opinion and that's what I want to emphasize here there's absolutely nothing. Let me ask you this speaking only for myself I don't know what my colleagues think about this I think the district court may have erred in declining to consider the events that it considered to be time barred as part of the hostile work environment claim if that was an error do we have to reverse? No your honor for well I know you do not have to reverse because first of all let's for a second and and I don't believe that was raised below I because that argument wasn't raised below the the fact that it should be considered background when you look at their response they never address address that they never make that argument but be that as it may in answer to your question it isn't background evidence that is any way relevant because those events that happened at that other hospital Jackson North right those events that happened in 2014 and before that before the employee was transferred to just Jefferson Reeves you have a different hospital with different supervisors in in in in different types of events but I want to stress they're different supervisors and they're it's a different hospital here you have a brand new set of supervisors at Jefferson Reeves and it's it's it's in a different hospital with different supervisors so you don't have any connection that would in any way bring this background evidence and lead some credence to that how this added to a hostile work environment so to answer your question directly absolutely not it really it that it would have no bearing on the alleged hostile work environment that this employee suffered at Jefferson Reeves was there was there any evidence in the record about why Ms. Harris was denied access to the supply closet or who had access the only evidence is that at some point it was administrator that would be the administrator who said we're going to implement this policy that we're not going to certain people weren't going to allow be allowed to enter the medical supply room but what is interesting here and what the district court below emphasized and it's Administrator Freeman she's the one that said something the fact nobody can enter the supply room what what the district court emphasized here below is that all she did was ask somebody else she asked the supervisor let me enter into the supply room she was then able to enter into the supply room and she went about her business so there's nothing detrimental about the fact that she had to ask somebody else for to allow to get into the supply room to get the supplies the point I'm trying to make is she was able to get the supplies she was able to carry out her duties and and it's this is undisputed that's that that order of hey you need to ask somebody permission or authority to be authorized to get into the supply room had nothing to do with the employee's race absolutely nothing it was just simply that it was a a mandate or a directive from Administrator Freeman who's also african-american that in order to get into the supply room you're going to have to ask authorization from somebody else and that's what she did so that's I think I've addressed that question um as to the supply room briefly there was some reference to uh the district treatment as to the disciplines involved here and here was a three-day suspension a five-day suspension and ultimately a termination and when you look at those disciplines you're going to see that Carreno right the person who allegedly made that vulgar statement or the racist statement she had nothing to do with those disciplines she did not author the disciplinary action report for the three-day the five-day or the dismissal she wasn't the decision maker as it relates to the three-day the five-day or the or the termination beyond that when you look at those disciplines they stand on their own right they she was late as to the three-day suspension she was absent a number the plaintiff was absent a number of days and it's reflected in the um in our swipe in swipe art system called Cronos and as a result of that she was disciplined for that there's nothing race related as it relates to that Cronos does not discriminate as to the five-day suspension it's as a result it's because the plaintiff was rude to a pregnant patient who wanted to get a vaccine and the uh pregnant patient went ahead and submitted a letter she submitted a letter saying I was treated very rudely by this nurse and as a result of that I you know we had to come back a second day that's why she had the five-day suspension and ultimately the termination is because she called her supervisors in their chain of command in the chain of command she referred to them as bitches and wanted to get them fired and that was reported by another nurse uh I'm with Ms. Carreño. Do you think that if the statement had included the n-word it would be enough to establish a pervasive hostile environment? The 11th circuit um I don't think has dealt with that particular issue we don't have that issue here um I so I'm I think the answer to that of the strength of the one slur cases that we've seen over the years from the 11th circuit so based on that hierarchy of cases um I would I think the answer would be no now other courts have recognized I guess there's something just uniquely violent or damaging about that that word right and that might be the case um and that would be understandable but we don't have that we don't have that issue here and the 11th circuit hasn't ruled on that so um I don't have any unless the court has any questions related to any of the other issues I think I've addressed them in my brief um I will rest on my brief unless there's anything else um any other subject area of request that the order granting summary judge and be affirmed thank you a few points on rebuttal uh first my friend on the other side attempts to take each and every one of the uh points that we discussed in our brief uh in a piecemeal fashion but this court said to look at a hostile work environment claim based on the totality of the circumstances he attacks the following and says that uh it's it's insufficient and the district court did the same uh and that was error and harris versus forklift systems uh u.s supreme court case it said that no one factor is required under the hostile work environment claim and in finding that the following uh the district court simply disregarded the following solely because it said oh this is not threatening or humiliating but again that totally disregards another factor that this court looks at which is the frequency and in smelter it said where the plaintiff testify that on a daily basis they were harassed that is pervasive harassment and so by ignoring the frequency this court violated supreme court precedent and it didn't uh view this case appropriately and my opposing counsel did the same thing during just to be a be sure i understand what is the frequency what evidence is the frequency argument based on in this case it's based on miss harris's testimony that uh the following occurred daily as well as the uh denial of the supply closet was daily because uh she needed supplies to do her job every single day as a nurse and uh also um opposing counsel said that there's no harm in the fact that she had to ask uh to get access to the supply closet but there's two reasons why that's incorrect the first is that it was colored by miss carino's racist statement uh and so every day that miss harris had to go and ask someone else to open the supply closet she's reminded of that racism reasonable could find that that's pervasive and hostile the second reason is that uh the person who she had to request access from was technically her subordinate so she's effectively been demoted uh and every day has to wait around on someone who is technically uh her subordinate and again that's humiliating and it's pervasive harassment this court asked a lot about comparative evidence and one point on that is we do have uh the testimony of miss harris's co-worker miss mels who said that african-americans were treated differently in this office and so what we see is when miss carino didn't think miss harris was african-american she's treated one way as soon as she has reason to believe she is she starts treating them consistent with miss mel's testimony differently some specifics about miss mel's testimony did she just make a general statement or did she have specifics about the way people are treated differently she said that african-american employees were generally under more stress and that they had more required of them and that they were micromanaged but beyond that we don't have uh many specifics and i'll close to um address one thing before your time runs out and if you go over it's okay um but he got into the disparate treatment claim a little bit and i just want to make sure you have an advantage or have an opportunity to respond can you and i think in my mind speaking only for myself the toughest piece for you there is the fact that um carino was not the decision maker neves was and so you've got somehow to impute carino's ugliness sure um but i mean it isn't isn't it fairly clear that neves did the required independent investigation here to kind of cut the causal chain so to speak as to the termination and and even to the termination we dispute that it cuts the causal chain uh because miss nieves was the one who defended miss carino and she says multiple times that she relied on the recommendation of miss freeman someone else we allege in a brief is taking response or a role in some of this these uh discriminatory actions but as to it's important to know that it's not just determination we've got disciplinary action reports and three-day suspensions and both of which miss harris testified that when she asked why am i being disciplined miss freeman and miss liss told her that this is under the direction of miss carino and this court in the lampala's case found that the cat's paw theory can suffice under the disparate treatment uh cause of action i'm sorry what was that case that you decided it's lump alice versus mini circuits lab inc do you happen to have the site i'm so sorry sure that's 163 f3d 1236 at 1249 and it's it's stands for the proposition that if you act in accordance with a harasser's recommendation uh without you know further investigating yourself and simply rubber stamp that recommendation then that can be sufficient to connect the harasser to the disciplinary action do you recall where in the record the the statements were that these disciplinary actions were taken on the recommendation of miss carino yes your honor it's uh 32 5 at 21 and 27 and again on pages 31 and through 32 when miss harris asked her co-workers why am i being treated like this they said go talk to gia that is miss carino and was that was that miss harris's testimony yes your honor and we'd ask this court to reverse uh as to all three of miss the grand of summary judgment as all three of miss harris's claims thank you thank you mr nix i know that you are a law student at the university of georgia law school and um you've done a very good job also thank your professor professor birch over here is your supervising attorney thank you excellent job very well done